UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
San Antonio DIVISION

| | | |
|---|---|---|
| MICHAEL RISENMAY and | § | |
| LEANNA RISENMAY, individually | § | |
| and on behalf of their children, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 5:11-cv-733-XR _____ |
| | § | |
| DANIEL ELDRIDGE and FLYING R | § | |
| RANCH PROPERTY OWNERS' | § | |
| ASSOCIATION, INC., | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiffs Michael and Leanna Risenmay bring this civil action for injunctive, declarative, and monetary relief, and complain that Defendants Daniel Eldridge and the Flying R Ranch Property Owners' Association, Inc. have violated their rights under federal and state law by discriminating against them and their children based on their race, ethnicity, disability, and/or color in attempting to force their family out of the neighborhood through harassment, intimidation, and assault; traumatizing the family with obscene gestures, racist signs, dead animals, and shotgun blasts; stopping the children from taking buses to public school; and preventing the family from fully using and enjoying their home and property.

### JURISDICTION AND VENUE

1.      The Court has jurisdiction based on 28 U.S.C. §§ 1331 and 1343 to hear Plaintiffs' federal claims brought pursuant to the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1985; Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.*; the Fair Housing Act (FHA), 42 U.S.C. § 3604; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*; and pendent jurisdiction to hear their state claims under the Texas Fair Housing Act, Tex. Prop. Code

§ 301.025; Chapter 121 of the Texas Human Resources Code, Tex. Hum. Res. Code §121.001; and the state common law claims of assault, tortuous interference with contract, and intentionally infliction of emotional distress.

2.      This Court is the proper venue because a substantial part of the events giving rise to the claim occurred in Comal County of this district. 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

3.      Mike and Leanna Risenmay live in Comal County along with their children. While both are white, Ms. Risenmay is of Jewish descent and all of their minor children are of African American descent.

4.      Defendant Flying R Ranch Property Owners' Association, Inc. is corporation created for the purpose of the upkeep of the subdivision. It can be served through its registered agent, Kirk Riedel, State Route 1, Box 108A, New Braunfels, Texas 78130.

5.      Defendant Daniel Eldridge is a member of Defendant Flying R Ranch Property Owners' Association, Inc. He can be served at 700 Flying R Ranch, Spring Branch, Texas 78070.

## STATEMENT OF FACTS

6.      Mike and Leanna Risenmay have been married for years as a very happy couple. They love children. After having two biological children, they began adopting children because they believed so strongly that they could provide a warm and loving family for children who needed a home.

7.      Over time, the Risenmays adopted nine more children. All of these children are of some African American descent. Six of the children have disabilities that require some form of special accommodation. The Risenmay family has the only African Americans living in the Flying R Ranch.

8.     Both of the Risenmays grew up in the country and wanted their children to have the tranquility they experienced. They have fond memories of their childhoods, growing up with lots of space and being free from the troubles and stresses that can come with urban living.

9.     Mr. and Ms. Risenmay wanted to provide the same type of upbringing for their own children so they could have their own fond memories of life in the country. They want their children to be able to go outside, explore, and have their own animals and a garden. Most of all they wanted a nice, big, quiet place to raise their children in peace.

10.    Robert and Betsy Pinto own a piece of property in the Flying R Ranch with over twenty acres and a home on it. The Pintos wanted to move closer to their children and grandchildren.

11.    The Risenmays met the Pintos through their church. When the Risenmays expressed their desire to find a peaceful, quiet place to raise all of their children, the Pintos suggested their land. When the Risenmays got a chance to see it, they knew it was the place for them. For nearly two years, Mr. and Ms. Risenmay have been leasing the home and land from the Pintos.

12.    Mr. Risenmay works as a landscaper. Six of the Risenmays' children have various emotional, learning, or mental disabilities, all of which require certain accommodations. Four of their children attend Comal ISD schools, while Ms. Risenmay stays at home full-time to homeschool two of the children and care for all of her children's needs.

13.    As a result of the accommodations necessary for certain disabilities, many of the Risenmay children require special transportation to get to school. It is crucial that the children ride in these buses to school each day. A key part of the agreement between the Risenmays and the Pintos was that the Comal ISD special transportation would be able to come into their neighborhood and pick up their children.

14.     Defendant Eldridge and his wife own several tracts of property in the Flying R Ranch neighborhood. Like the other Flying R properties, his have many acres each on them. Eldridge lives on the ranch directly across the street from the Risenmays.

15.     The entrance to the Risenmays' driveway faces Defendant Eldridge's property. However, Defendant Eldridge's home and driveway face an entirely different direction well up the road from the Risenmays' land. The road is the only way to enter the Flying R Ranch neighborhood and the only way to reach the Risenmays' home.

16.     Defendant Eldridge hates the Risenmay family and wants them to move out of his neighborhood. He is an admirer of the Ku Klux Klan and embraces their values of discrimination against people they consider inferior, including those who they believe to be black, Jewish, or have disabilities. Various members of the Risenmay family are members of each of these groups.

17.     As a member of the Board of Directors of the Defendant Flying R Ranch Property Owners' Association, Defendant Eldridge was particularly incensed that school buses might come inside his neighborhood to transport children he hates. While actually motivated by discriminatory intent, he and Defendant Property Owners' Association (POA) falsely assert that the road is private, and that they can deny the children's right to receive accommodations to go to a public school for this reason.

18.     Defendants are incorrect, and have reason to know better. All of the members of the Flying R Ranch Property Owners' Association are part of a covenant. Under the covenant, all of the POA members agree to grant an easement for the purpose of ingress and egress to the Flying R Ranch properties. The Pintos are members of the POA, and they have granted this easement to the Risenmays as well as the local school district for the purpose of bringing buses to transport the children.

19.     Defendants disingenuously claim their concern is for damage to the road or liability related to the school bus. Of course, numerous vehicles not belonging to POA members drive on the road every day. Federal Express delivers packages to houses and Meals on Wheels serves residents of the community. Defendants have never tried to stop any of these vehicles from driving on the road. Even though Defendants have signed the covenant granting the easement of the road, to this day they continue to oppose and make efforts to stop the buses from transporting the Risenmay children to school.

20.     Until approximately a month ago, it seemed the local school district would not bring their school buses into the Flying R Ranch neighborhood. As a result, Mr. and Ms. Risenmay would sometimes spend up to five or six hours every school day, dropping off and picking up their children from school. Their children attended four different schools. At times, for each child with a disability, Mr. or Ms. Risenmay was required to park the vehicle, help the child into the school, and sometimes wait until the child was in his or her classroom before she could get back into the vehicle and take the remaining children to their respective schools. This process often made the children late for school. In addition, this long, arduous and sometimes uncomfortable process of waiting also negatively impacted the children. They suffered from anxiety, nervousness, outbursts, and were exposed to the heat as a result of not being able to join their friends to ride the school bus provided for by Comal ISD. At other times, the Risenmays had to transport their children to a pick-up and drop-off location for a bus about two miles away from their home.  The location for pick-up and drop-off was at the top of a hill, with no shoulder. The vehicles traveling on that road were driving between 35-50 miles per hour. The bus stop location was also difficult for oncoming vehicles to see until the driver was almost upon the bus stop location itself. The process of dropping off and picking up the children also consumed a significant amount of the

Risenmays' time every school day. The special need programs at Comal ISD schools run throughout the summer months, not just the typical school year.

21.     Finally, within the last year, a nonprofit legal assistance group, Disability Rights Texas (DRT), stepped in to help the Risenmay family. DRT began to assert the family's rights to transportation to school with both the school district and the Defendant POA.

22.     Defendants were incensed. Eldridge began to take more drastic measures with racial overtones to intimidate the family into leaving Flying R Ranch. One morning in July of 2011 after Mr. Risenmay had gone to work, Defendant Eldridge threw three dead raccoons onto the driveway at the entrance to the Risenmays' property. Defendant Eldridge placed the dead raccoon bodies to obstruct the pathway to the house such that a person entering the home could not help but see them, and would be forced to move around the carcasses.

23.     Another of the accommodations required for some of the children is an educational aide. When the educational aide arrived, she was startled by the raccoon corpses in her path.

24.     Meanwhile, Defendant Eldridge used his status as a member of the POA Board of Directors to conspire with the Board in an attempt to stop the bus from entering his neighborhood. Defendant Eldridge has known POA Board President Ray Laxson for decades and was a business partner with him at the same company.

25.     Defendant POA, including Board of Directors member Eldridge and Laxson, threatened legal action to prevent the school buses from picking up the Risenmay children at their home.

26.     As it turned out, Comal ISD was not opposed to sending its buses to the Risenmay home at all. It was simply concerned that Defendant POA had the right to prevent it from doing so.

27.     On August 22, 2011, DRT attorney Lucia Romano Ostrom sent a letter to Comal ISD explaining Defendant POA had no such right to deny the bus from entering the Flying R Ranch,

and formally requesting both entities make reasonable accommodations to allow and provide for the bus service to which the Risenmay family had a legal right.

28.     Comal ISD immediately agreed, leaving Defendants even more infuriated. Within a day or two, Comal ISD was sending its bus to the Flying R Ranch. In the morning, while Ms. Risenmay and her child were waiting patiently for the school bus, Defendant Eldridge saw her and began wildly gesticulating at her in a menacing – and successful – attempt to frighten her and her children. He intentionally made an obscene gesture directed at Ms. Risenmay, who had neither said nor done anything to him.

29.     Defendants were planning to take even more drastic action to discriminatorily interfere with the children's simple right to go to school. On the morning of August 26, 2011, as the Comal ISD school bus was turning onto the Flying R Ranch road entrance, Defendant Eldridge was ready and waiting for it. As the school bus entered, Defendant intentionally pulled his slow-moving tractor out in front of the bus, blocking its ability to reach the Risenmays' home. While the school bus driver refused to turn around, he could not get around Defendant's tractor on the small road. Eldridge drove at a snail's pace past his own driveway all the past the Risenmays' driveway, delaying the bus for approximately a half hour. Defendants did not simply traumatize the already fragile Risenmay children and their mother and force the Risenmay children to be late for school. He forced all of the children riding the bus to be tardy.

30.     Later that same day, as it returned to drop off the children, Defendant Eldridge was waiting for the school bus again. Once again, he pulled out in front of the bus and drove his vehicle as slowly as possible in the middle of the road, ensuring the school bus would be unable to pass him. By doing so, he once again caused inordinate delays for all of the children on the bus and serious traumatic concerns for the Risenmay children and their parents.

31.    By the morning of Monday, August 29, 2011, Ms. Risenmay was so distraught that she was ready to call the police. So after Defendant Eldridge deliberately pulled his tractor in front of the Comal ISD school bus that morning, she did just that.

32.    Defendant Eldridge was livid. Knowing that it was Ms. Risenmay who had called the police, he decided to further menace her with a message sure to chill her and her family to the core. On his property, across from the Risenmays' driveway, Defendant Eldridge hung the following sign with writing in red paint from his tree:



33.     Eldridge's sign has no free speech value. Its only purpose is to offend, threaten, and frighten Ms. Risenmay and her children, and it had its intended effect. Ms. Risenmay and the children at home were scared well beyond anything previously. She called the police again.

34.     Sadly, that afternoon, when the children returned on the bus, they had plenty of time to read the sign with their friends on the bus, as Defendant Eldridge once again obstructed its progress. This time, the police were there to document the intentional and unnecessary attempt to stop the school bus from returning the Risenmay children to their home.

35.     Defendant Eldridge forced the children to read this new message of hate in front of their friends and peers. Later, they would come home and ask questions, bewildered and hurt, about what Nazis were and why this message of hate was leveled at them and their mother.

36.     Not only was the President of the Defendant POA present for the obstruction of the bus, he observed and condoned it. Even if Defendant Flying R Ranch Property Owners' Association could not legally stop the bus from entering the neighborhood, it was more than content to conspire with Defendant Eldridge to stop the bus and drive the Risenmay family out of the neighborhood by any means necessary.

37.     Defendant Eldridge refused to move his tractor even after the police officer ordered him to do so. After nearly an hour, he finally complied, but not until he vowed to the officer, "This is not going to get any better. It's going to get a lot worse."

38.     Over the next week, Defendant Eldridge made good on his promise, menacing the Risenmay family with new, disturbing messages across the street from their driveway on a daily basis. Most of the messages he sends are tinged with racial prejudice or the threat of violence. On one instance, he sarcastically urged the family to vote for President Obama.

39.     Defendant Eldridge has yelled and screamed at Ms. Risenmay and her children when they happen to drive by, scaring them and forcing them to hurry past him. He has made threatening and obscene gestures toward Ms. Risenmay in the company of her children and at the Risenmays' 10-year-old child when he was without his parents.

40.     Despite warnings and citations from the police, Defendant Eldridge continues to impede the school bus and to deliberately inflict further damage on the Risenmay family. Even when he does not block the bus, he will wait for it and film the children entering, exiting, and riding on it. He continues to flout all conscionable and reasonable authority, spiraling further down into an unbalanced, knowing campaign of terror against an innocent and helpless family. Even the police urged the Risenmay family to seek a restraining order against Defendant Eldridge.

41.     In the beginning of September, Defendant Eldridge placed a sign on his property directly across from the Risenmay's driveway with a smiley face reading: "Be Happy." The smiley face was ominously shot through with bullet holes.

42.     The next morning, Mr. Risenmay was working in the yard with two of his children. He and his children heard the firing of a shotgun from across the road.

43.     Defendant Eldridge stood alone across the road on his property with a shotgun. He was intentionally firing blasts in the direction of Mr. Risenmay and his children, showering their property with shotgun pellets. When the children realized what Defendant Eldridge was doing, they fled back to the house. Their nightmare had reached new depths. Meanwhile, a horse on the Risenmays' property, limited to a corral near where the shots were landing, started repeatedly in fright at each new threatening blast from Defendant Eldridge's shotgun.

44.     Mr. Risenmay called the police, and he and his children submitted statements. But Defendant Eldridge and his shotgun remain on his property, free to pursue his menacing

campaign of terror against two parents alone in a vast and hostile neighborhood with their children, many of them too young to fully comprehend the prejudice that drives their tormentor.

45.    Meanwhile, Defendant Flying R Ranch Property Owners' Association continues to oppose the Risenmay family generally and the entrance of buses into the Flying R Ranch specifically. Apart from the Pintos, who have continually supported the right of the Risenmay family to stay in the Flying R Ranch and for the school bus to take their children to school, no member of the POA has personally come to the Risenmay family to express any form of support for them or opposition to the discriminatory actions of Defendants.

46.    Defendants have turned the lives of all of the Risenmays upside down. In one way or another, they all now live in frustration, fear, or anguish. Defendant have caused several of the children to seriously regress mentally and physically, inflicting serious mental and emotional damage while forcing them to lose hard-won gains in behavior and achievement at school.

47.    Defendants have caused the health of Ms. Risenmay and many of her children to suffer egregiously for the purpose of forcing them to evacuate the neighborhood. Without the intervention of this court, the Risenmay family will have no choice but to give in to Defendants' campaign of intimidation and discrimination. Mr. and Ms. Risenmay fear for their own safety and especially that of their children, while some are afraid to live in or leave their own house.

CAUSES OF ACTION

I. Violations of 42 U.S.C. §1981

48.    Section 1981 of the Civil Rights Act of 1866 protects citizens' rights to make and enforce contracts and purchase both personal and real property without any impairment due to private or public racial discrimination. 42 U.S.C. § 1981.

49.     The Risenmay family agreed on a contract with the Pintos to the full and peaceful use and enjoyment of their home and property. Part of their agreement goes specifically to the ability to access transportation for their children to go to public schools like any other children.

50.     Defendants have violated Section 1981 because the several members of the Risenmay family belong to protected classes. Defendants had the intent to discriminate on the basis of their perceived race, color, or ethnicity; and, as a result, Defendants have interfered with the protected activity of the Plaintiffs to make and enforce contracts. 42 U.S.C. § 1981.

54.     Defendants Dan Eldridge and Flying R Ranch Property Owners' Association have violated Section 1981 by attempting to deny the Plaintiffs their right to make and enforce contracts by trying to disrupt the Plaintiffs from enjoying the right to lease the property located in the Flying R Ranch subdivision. Specifically, the Defendants have attempted to interfere with the leasing contract that the Plaintiffs have between them and Bob Pinto, the owner of the property, because of the race, ethnicity, or color of Ms. Risenmay and her children.

<u>II. Violations of 42 U.S.C. § 1985(3)</u>

55.     Under Section 1985(3) of the Civil Rights Act of 1866, it is illegal for two or more people to conspire or go in disguise on the highway or on the premises of another person, for the purpose of depriving, either directly or indirectly, any person or class of people of the equal protection of the laws, or equal privileges and immunities under the laws. 42 U.S.C. § 1985(3).

56.     If there is a conspiracy to between two or more people to deprive another person of their rights under the constitution, if one or more persons engaged in the conspiracy, causes an action to be done or commits any act in furtherance of the object of the conspiracy that results in injury to the person himself or herself or to the person's property or the person is deprived of exercising

their rights as a citizen of the United States, the party may recover damages in a private cause of action against any one of the conspirators. 42 U.S.C. § 1985(3).

57.     Section 1985 provides a remedy for the enforcement of rights that a citizen has under the Constitution or other laws. 42 U.S.C. § 1985(3).

58.     The right of interstate travel is constitutionally protected and may be claimed as a cause of action against private individuals. *Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971). "The right of any person to travel interstate irrespective of race, creed, or color is protected by the Constitution. Certainly his right to travel intrastate is as basic." *Bell v. Maryland*, 378 U.S. 226, 255 (1964) (Douglas, J., concurring).

59.     A violation of the constitutional right to travel by two or more conspirators against a citizen does not require state action. 42 U.S.C. § 1985(3).

60.     As a member of the Board of Directors, Defendant Eldridge has conspired with Defendant Flying R Ranch Property Owner's Association, Inc., including Board President Ray Laxson to deprive the Risenmay family of their constitutional rights, including the right to travel, by blocking access of the Comal Independent School District school bus from entering and leaving the Flying R Ranch to pick up and drop off the Risenmay children for the purpose based on invidiously hostile and illegal discrimination against their immutable characteristics.

61.     The reason Defendant Eldridge has conspired with the Flying R Ranch Property has nothing to do its roads being private or potential damage to the roads. There is an easement on the road for ingress and egress, and neither of Defendants ever made any effort to stop the many vehicles that frequent the road of the Flying R Ranch for purpose including delivery of Meals on Wheels, FedEx, and the other vehicles.

62.     Defendants Eldridge and POA have also conspired to deprive the Risenmay family of their constitutional right to travel by blocking access of the Comal Independent School District bus and thereby impeding the right of the Risenmay's children from enjoying the fundamental right to travel, association, and movement. *See Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971).

### III. Violations of 42 U.S.C. § 2000a of the Civil Rights Act of 1964

63.  The Flying R Ranch Property Owners Association, Inc., is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b)(2), and its operations affect interstate commerce within the meaning of 42 U.S.C. § 2000a(c)(1).

64.  The Public Accommodation Act provides that all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, religion, or national origin. 42 U.S.C. § 2000a.

65.  By denying the Risenmays access to the services and facilities of the Flying R Ranch, including peaceful use of their property and their right to take a bus to public schools, Defendants have deliberately and consciously denied them full and equal enjoyment of the goods, services, facilities and privileges of a public accommodation without discrimination on the ground of race or color, in violation of the Public Accommodation Act.

66.  Plaintiffs are entitled to compensation for the injuries Defendants have caused them.

### IV. Violations of the Federal Fair Housing Act

67.     The Fair Housing Act prevents discrimination "against any person in the terms conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2).

68.     It mandates that entities make "reasonable accommodations in rules, policies, practices, or services, when such when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas." 42 U.S.C. § 3604(f)(3)(B).

69.     Defendant POA has violated the FHA by discriminating because of a handicap in the provision of services in connection with the Plaintiff's dwelling by refusing to allow peaceful use of their land and access of the Comal ISD school buses to transport the Risenmays' children. Defendants' refusal to allow access to the road maintained and provided by the Defendants is a violation of the FHA.

70.     The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [42 U.S.C. § 3604]." 42 U.S.C. § 3617.

71.     It is unlawful under section 818 of the Fair Housing Act to threaten, intimidate, or interfere with any person in the enjoyment of a dwelling because of the person's race, color, sex or handicap, or of the visitors or associates of the person. The Department of Housing and Urban Development has passed a regulation that makes 24 CFR 100.400(c)(2).

72.     Defendant has violated 42 U.S.C. § 3617 by coercing, intimidating, threatening, or interfering with Plaintiffs' in the exercise and enjoyment of their rights granted under the FHA. Specifically, Defendant has coerced, intimidated, threatened, and interfered with the Plaintiffs in the exercise of their Fair Housing Rights.

## V. Violations of the Texas Fair Housing Act

73.     The Texas Fair Housing Act states that "a person may not discriminate in the sale or rental of, or make unavailable or deny, a dwelling to any buyer or renter because of a (1) disability of the buyer or renter; (2) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or (3) any person associated with the buyer or renter. Tex. Prop. Code § 301.025(a)(1)-(3).

74.     The Texas Fair Housing Act prohibits discrimination against those with disabilities in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a disability of (1) the other person; (2) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or (3) any person associated with the other person." *Id*. § 301.025(b)(1)-(3).

75.     Defendant POA has violated the Texas Fair Housing Act by making unavailable and denying a dwelling to the Risenmays based on services required by some of their disabilities. Specifically, the Defendant has attempted to prevent access to public education transportation and force the Risenmays from their home.

76.     Defendant's invidiously motivated pattern of harassment denies the Risenmays and their children the full use and enjoyment of the rental of their dwelling.

## VI. Violations of Chapter 121 of the Texas Human Resources Code

77.     It is the policy of the State of Texas to encourage and enable people with physical disabilities to fully participate in social and economic activities in the state, and to enjoy access to all public facilities available for use within the state. Tex. Hum. Res. Code §121.001.

78.     Texas law creates a cause of action for people with disabilities against any person, association, or corporation that deprives them of their civil liberties. *Id.* § 121.004(b).

79.     Defendant POA's discrimination and retaliation against the Risenmay family for asserting their rights under law protecting people with disabilities is a violation of Chapter 121.

80.     Chapter 121 states that people who have disabilities are entitled to the same rights as abled-bodied individuals to the full use of any public facility in Texas, including the right to go to a public school and to access the road located in the Flying R Ranch subdivision.

81.     Defendant's refusal to allow access to the road located in the Flying R Ranch subdivision for the ingress and egress of the school bus for the Risenmays' children has denied, and continues to deny, Plaintiffs because of their disabilities, the same rights that people without disabilities enjoy to send their children to school and use of the road, in violation of Chapter 121.

82.     Defendant has the legal duty to make reasonable accommodations in its policies, practices, and procedures to ensure that it does not discriminate against the Risenmay family, but has refused to make such accommodations despite Plaintiffs' requests. *Id*. §121.003(d)(2). Despite the fact that the accommodations requested by the Risenmay family are simple, reasonable, and no undue burden on Defendant, it has refused to make any such accommodation.

83.     Chapter 121 provides for a penalty of no less than $100 to each aggrieved party for each violation of the law, for which Defendant is liable to Plaintiffs as a result of the allegations herein. Tex. Hum. Res. Code § 121.004(b). There is no limit to this penalty.

## VII. Violations of Title III of the ADA

84.     In passing the ADA, Congress identified some 43,000,000 Americans, including children, as having one or more disabilities and found that discrimination against individuals with disabilities continues to be a serious and pervasive social problem. 42 U.S.C. § 12101(a)(1)–(2).

85.     Congress found that, historically, society tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be endemic. 42 U.S.C. § 12101(a)(2).

86.     Congress also found that discrimination against individuals with disabilities persists in such critical areas as housing, institutionalization, and access to public services. 42 U.S.C.   § 12101(a)(3).

87.      Among its stated purposes, the ADA has a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities and to establish clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. § 12101(a)(1)–(2).

88.     The ADA entitles individuals with disabilities to full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations provided by or at a place of public accommodation.    42 U.S.C. § 12182(a). Defendant POA and the road are a public accommodation or service within meaning of the ADA.

89.     The ADA also states that it is unlawful discrimination "to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i)

90.     Defendant Flying R Ranch Property Owners Association has violated the ADA by directly and intentionally discriminating against members of the Risenmay family on the basis of their disabilities and preventing the Plaintiffs from participating in or benefiting from the goods, services, facilities, privileges, advantages, or accommodations of the Flying R Ranch Property

Owners Association. Specifically, the Defendants have denied the Plaintiffs the benefit of the use of their facilities and services, i.e., the road that has been in the past used by the general public. In addition, Defendant has denied Plaintiffs the facilities and services of the transportation to school by excluding only their school bus but no other vehicles from the subdivision and by refusing to grant permission to the Comal ISD to drive on the road.

91.    It is discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages accommodations, or other opportunities to any individual because of a known disability of an individual with whom the entity has an association or relationship under the ADA. 42 U.S.C. § 12182(b)(1)(E).

92.    The POA is further discriminatory for refusing to make reasonable modifications in policies, practices, or procedures, when the modifications would be necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

93.    The ADA also prohibits Defendant from discriminating against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act. 42 U.S.C. § 12203(a).

94.    Defendant POA has also violated the ADA because it is unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, any right granted or protected by this Act. *Id*. § 12203(b).

<u>VIII. Tortious Interference with Contractual Rights</u>

95.    Defendants have willfully and intentionally attempted to interfere with the full performance of the rental contract between the Risenmay family and the Pintos by denying them use of the subdivision road and by attempting to force the constructive eviction of Plaintiffs.

19

96.     Because of the actions of the Defendants, Plaintiffs have had an existing contract for rent of the premises with Bob Pinto that was subjected to interference, that the alleged act of interference was willful and intentional, and that actual losses occurred. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

97.     Plaintiffs have suffered actual losses from the terms of the lease contract because they have lost the enjoyment of the home, land, and neighborhood that was an essential part of their contract with the Pintos.

<u>IX. Assault</u>

98.     Defendant Eldridge acted intentionally, recklessly, and with callous indifference in firing his shotgun towards Mr. Risenmay and his children, thereby committed the intentional tort of assault under Texas common law. He has also caused Ms. Risenmay and her children fear and pain through offensive acts of yelling, screaming, invading their property, and obscene gestures.

<u>X. Intentional Infliction of Emotional Distress</u>

99.     Defendants have directed their conduct at the Risenmay family, including threats, intimidation, yelling, obscene gestures, discrimination, firing shots, and the physical blocking a special needs school bus. Their actions are extreme, outrageous, intentional, and reckless, and have caused the Plaintiffs severe emotional distress. *See Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65-6 (Tex. 1998). Defendants' conduct is extreme and outrageous because it is beyond all bounds that a civilized society is willing to tolerate. *See Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)

100.    Defendants' actions have caused particularly severe emotional distress Ms. Risenmay and some of their children because of their existing disabilities. Their actions have caused at least one child to be hospitalized three times since they began their intentional and outrageous conduct.

## RELIEF REQUESTED

### Injunctive Relief

101.   Plaintiffs are concurrently filing a motion for a temporary restraining order and preliminary injunction. Defendants continue to threaten their safety and their rights at this time.

102.   Plaintiffs also respectfully requests a permanent injunction. They ask the court to grant a permanent injunction that prohibits Defendants from discriminating against the Plaintiffs due to their race, ethnicity, color, and disabilities, and from excluding them from the provision and of services and enjoyment of their property to which they are entitled.

103.   As a proximate result of Defendants' actions, the Risenmays have suffered, and will continue to suffer, irreparable injury in the denial of their civil rights. Unless injunctive relief is granted, Plaintiffs will continue to suffer immediate and irreparable injury for which there is no remedy at law.

### Declaratory Relief

104.   This suit involves an actual controversy within the Court's jurisdiction, and the Court may declare the rights of the Risenmays under the Constitutions and laws of the United States and Texas, and grant such relief  that is necessary and proper.

### Compensatory Damages

105.   Plaintiffs seek damages from being denied the fundamental right to travel protected by the Constitution, and enforced through Section 1985 (3) as a result of the discriminatory actions by the Defendants against the Plaintiffs based on their race by preventing the Comal School Bus from entering the subdivision. 42 U.S.C. § 1985(3).

106.    Chapter 121 provides for a penalty of at least $100 to an aggrieved party for each violation of its chapter, for which Defendants are liable to Plaintiff as a result of the allegations herein. *Id*. §121.004(a). There is no limit to this penalty.

107.    Plaintiffs seek reimbursement for having incurred damages in the form of transportation costs of driving their disabled children to and from school every day from September 2009 to March 2010 that was proximately caused by the Defendants violations of the FHA, ADA, by the defendants for failure to provide reasonable accommodations or services to the disabled children of the Plaintiffs.

108.    The Risenmay family seeks damages caused by the Defendants actions resulting in the severe emotional distress of at least one child, who had to be hospitalized three times since the intentional and outrageous conduct of the Defendants. Plaintiffs also seek recovery in the costs of the psychiatric care that their children have needed as a result of the intentional and reckless actions of the Defendants that go beyond the bounds of a civilized society.

109.    Plaintiffs seek damages in the form of the loss of enjoyment of the rental property located in the Flying R Ranch subdivision as a result of the actions of the Defendants in denying family members access or reasonable accommodation in the full use and enjoyment of their property.

110.    Plaintiffs also seek emotional damages resulting from the emotional distress and anxiety Defendants cause them and their children from being negatively impacted by being denied the right to access the school bus provided by Comal ISD.

111.    Plaintiffs also seek reimbursement for having incurred damages in the form of medical expenses related to the cost of the care of the children incurred as a result of being negatively impacted by the unreasonable denial of the accommodation of use of the Comal ISD school bus by the Defendants.

112.    Plaintiffs seek compensatory damages in the form of loss of reputation, personal humiliation, and mental anguish and suffering. *See Gertz v. Robert Welsh, Inc.*, 418 U.S. 323, 350 (1974).

Punitive Damages

113.    Because the willful, wanton, and malicious nature of Defendants' actions against the Risenmay family shock the conscience and are in utter disregard for their rights, Plaintiffs claim punitive damages against them.

Attorney's Fees and Costs

Plaintiffs are entitled to recover reasonable attorneys' fees, litigation fees, and court costs, as allowed by the statutes above, 42 U.S.C. §1988, and the Declaratory Judgments Act.

PRAYER FOR RELIEF

THEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:

A. Enter declaratory judgment that Defendants deliberately and consciously discriminated against the Risenmays on the basis of their race, ethnicity, disabilities, and/or color; conspired to deprive the Plaintiffs of their constitutional right to travel; failed to accommodate Plaintiffs disabilities and retaliated against them; interfered with their right to contract; and assaulted Plaintiffs and intentionally inflicted emotional distress on them; in violation of 42 U.S.C. §§ 1981 and 1985, 42 U.S.C. § 2000a, *et seq.*, the federal and state Fair Housing Act, Chapter 121, the ADA, and state laws;

B. Enjoin Defendants from further discriminating against, assaulting, and further violating the rights of the Risenmay family;

C. Award statutory penalties and actual damages for damages against Defendant sufficient to compensate the Risenmays and their children for the injuries they have suffered; as well as punitive damages to punish Defendants for their willful, conscious, and illegal misconduct in an amount sufficient to deter them from engaging in similar misconduct in the future;

D. Order Defendant to pay Plaintiffs' reasonable attorneys' fees and costs; and

E. Grant Plaintiffs all other and additional relief to which they may be entitled, at law or in equity.

Dated: September 6, 2011

Respectfully Submitted,

/s/ Wayne Krause_____
Wayne Krause
State Bar No. 24032644
James C. Harrington
State Bar No. 09048500
Abigail Frank
State Bar No. 24069732

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741-3438
   (512) 474-5073 [phone]
   (512) 474-0726 [fax]

ATTORNEYS FOR PLAINTIFFS